UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

                    Plaintiff,

        - against -

STEPHANIE LLOYD and
LAURELL LEWIS,

                    Defendants.
---------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**

10-CR-0622 (ADS)

**A P P E A R A N C E S:**

**LORETTA E. LYNCH**
United States Attorney for the
Eastern District of New York
610 Federal Plaza
Central Islip, NY  11722
By:     Lara Treinis Gatz, Esq.,
        Thomas M. Sullivan, Esq.
        Assistant U.S. Attorneys

**ROBERT P. LARUSSO, ESQ.**
Attorney for Defendant Stephanie Lloyd
300 Old Country Road, Suite 341
Mineola, NY  11501

**SPIRO L. FERRIS, ESQ.**
Attorney for Defendant Laurell Lewis
225 Broadway, Suite 3504
New York, NY  10007

**SPATT, District Judge.**

Presenting pending before the Court is a motion by the defendant Stephanie Lloyd ("Lloyd")

seeking the following relief:

1

1.  To sever the trial of the defendant Lloyd from the co-defendant Laurell Lewis on the ground of "antagonistic and irreconcilable defenses";

2.  Opposing the Government's motion in limine requesting a ruling on the admissibility of the 911 emergency call placed by an employee of the Postal Service; and

3.  Objecting to the introductions of the testimony of co-conspirators Jeremy Hough ("Hough") and Jamel Thompson ("Thompson") because of the lack of "independent corroborating evidence of the defendant's participation in the conspiracy." Citing United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).

Also pending before the Court is a motion by the co-defendant Laurell Lewis ("Lewis") seeking a severance from co-defendant Lloyd in the upcoming trial.

For the reasons set forth below, the Court denies three of the motions and reserves decision on the co-conspirator motion.

## I. **Background**

The fifth superceding indictment ("the indictment") charges both defendants with three counts of violations of federal laws. The counts involve the alleged robbery at gunpoint of the Wyandanch Post Office ("the Post Office") in Wyandanch, New York on October 30, 2009. Count four charges both defendants with conspiracy to rob the Post Office ("the Post Office Robbery Conspiracy"), in violation of 18 U.S.C. § 371. Count five charges the defendants with the Post Office Robbery, in violation of 18 U.S.C. § 2114(a). Count six charges the defendants with brandishing of a firearm in connection with the Post Office Robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The Government contends that the evidence at the trial will reveal that the defendant Lloyd was an employee of the Post Office during October of 2009, and that she provided confidential

information about the security and inner-workings of the Post Office to her co-conspirators. Allegedly, she provided the confidential information to her co-conspirators Travis Walker ("Walker") and Sharod Williams ("Williams"), with the knowledge and understanding that the information she revealed would be used to rob the Post Office at gun point. The Government further alleges that Williams recruited Thompson to execute the actual robbery and that Thompson recruited Hough and the co-defendant Lewis to rob the Post Office, which they did, at gun point on October 30, 2009.

## II. The Severance Motions

"There is a preference, in the federal system, for defendants who are indicted together to be tried together." See United States v. Diaz, 176 F.3d 52, 102 (2d Cir. 1999) (citing Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), and United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998)). Indeed, the Supreme Court has cautioned that district courts should grant a severance under Fed. R. Crim. P. 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Ultimately, the decision to "sever a joint trial of federal defendants is 'committed to the sound discretion of the trial judge.'" Diaz, 176 F.3d at 102 (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)).

In a prior decision in this case dated September 22, 2011, the Court found it appropriate to sever the trial of Lloyd from an oncoming trial involving seven charged robberies; six in addition to the Post Office Robbery. In doing so, the Court ruled that Lloyd was alleged to have been involved in only one of the seven charged robberies and the Government did not even "suggest" that she was a primary member of the alleged multiple "robbery crew." The Court further stated:

3

Given the volume of evidence that is likely to be admitted in relation to the robberies that Lloyd and Lowery were not allegedly involved in, the Court finds that the risk of prejudice of these defendants is great. The Court further finds that other remedies, such as limiting instructions, will not suffice to protect these defendants' rights to a fair trial. The Court therefore directs that Lloyd and Lowery each be tried separately from their co-defendants and from each other.

Also, as correctly stated by the Government in its supporting memorandum of law,

> Federal Rule of Criminal Procedure 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Under this standard, "a non-frivolous conspiracy charge is sufficient to support joinder of defendants." United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988). See also United States v. Rittweger, 524 F.3d 171, 177-78 (2d Cir. 2008) (multiple defendants properly joined in indictment that charged two conspiracies where the conspiracies evince a common plan or scheme, and there is a substantial identity of facts or participants); United States v. Stewart, 433 F.3d 273, 314 (2d Cir. 2006) (joinder of defendants proper where the case would otherwise have resulted in two essentially duplicate trials); United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (Rule 8(b) standard satisfied where charged counts were part of a series of acts that shared a common purpose and there was an overlap of participants and acts). In sum, multiple defendants may be charged with and tried for multiple offenses as part of a series of acts or transactions constituting offenses. United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988).

The defendants contend that they would be prejudiced by their joinder in this trial. The Court disagrees. There are two separate theories in this upcoming trial involving a simple robbery. The Government contends that the defendant Lewis participated in the actual robbery, while the defendant Lloyd participated, as an employee of the Post Office, only as an informer of inside information. The Court sees no prejudice in the joint trial that is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple trials. See United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998). In fact, the Court sees very little, if any prejudice, as to either defendant in this joint trial. As stated in the defendant Lloyd's letter memorandum, "in order to prevail, the defendant must show not simply some prejudice but substantial prejudice." United

States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004). With reasonable certainty, even if the severance was granted, very similar evidence would be introduced in each of the trials.

As stated above, Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transactions or in the same series of acts or transactions, constituting an offense or offenses." The conspiracy charge in this case with regard to the Post Office Robbery is a non-frivolous conspiracy sufficient to support joinder of defendants. United States v. Nerlinger, 862 F.2d 967, 972 (2d Cir. 1988). See also United States v. Stewart, 433 F.3d 273, 314 (2d Cir. 2006) (the joinder of defendants is proper where the case would otherwise have resulted in two essentially duplicate trials); United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (Rule 8(b) standard satisfied where charged counts were part of a series of acts that shared a common purpose and there was an overlap of participants and acts).

In addition, insofar as the defendants assert "antagonistic defenses," the Court finds no basis for a severance on that ground. The alleged involvement of each defendant is entirely separate. Defendant Lewis is alleged to have participated in an armed robbery of the Post Office. Defendant Lloyd is charged as an informant in the same conspiracy and robbery. Under these factual circumstances, it is difficult to conceive of a "antagonistic defense." An "antagonistic defense" is generally based on a situation where, in order to believe the testimony on behalf of one defendant, the jury must necessarily disbelieve the testimony offered on behalf of the co-defendant. See United States v. Villegar, 899 F.2d 1324, 1346 (2d Cir. 1990).

Where is the antagonism in this case? Apparently, according to counsel, the defendant Lloyd allegedly plans to "acknowledge the commission of the robbery and to concede the truthfulness of

the cooperating defendants' testimony, which defense is irreconceivable with the co-defendant

Lewis' defense." (Lloyd Letter Memorandum at 4). On the other hand, apparently the defense of

Lewis is that "he was neither a participant nor present when the alleged postal robbery occurred."

Thus, Lewis intends to "completely discredit the testimony of the cooperating defendants'

testimony," in direct contradiction to Lloyd's position. (Lewis Brief at 6).

The rule on antagonistic defenses was set forth in great detail by the Supreme Court in Zafiro

v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L. Ed. 2d 317 (1993). In Zafiro, two defendants

both claimed they were innocent, and each actually accused the other of committing the crime; a

classic antagonistic defense. Held, the denial of severance was affirmed.

> As to the first contention, it is well settled that defendants are not entitled to
> severance merely because they may have a better chance of acquittal in separate
> trials. See, e.g., United States v. Martinez, 922 F.2d 914, 922 (CA1 1991); United
> States v. Manner, 281 U.S.App.D.C. 89, 98, 887 F.2d 317, 324 (1989), cert. denied,
> 493 U.S. 1062, 110 S.Ct. 879, 107 L. Ed. 2d 962 (1990). Rules 8(b) and 14 are
> designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so
> long as] these objectives can be achieved without substantial prejudice to the right
> of the defendants to a fair trial." While "[a]n important element of a fair trial is that
> a jury consider only relevant and competent evidence bearing on the issue of guilt,
> or innocent," ibid. (emphasis added), a fair trial does not include the right to exclude
> relevant and competent evidence.
>
>        *    *    *    *    *
>
> Moreover, even if there were some risk of prejudice, here it is of the type that can be
> cured with proper instructions, and "juries are presumed to follow their instructions."
> Richardson, supra, 481 U.S., at 211, 107 S.Ct., at 1709. The District Court properly
> instructed the jury that the Government had "the burden of proving beyond a
> reasonable doubt" that each defendant committed the crimes with which he or she
> was charged. Tr. 864. The court then instructed the jury that it must "give separate
> consideration to each individual defendant and to each separate charge against him.
> Each defendant is entitled to have his or her case determined from his or her own
> conduct and from the evidence [that] may be applicable to him or her." Id. at 865.
> In addition, the District Court admonished the jury that opening and closing
> arguments are not evidence and that it should draw no inference from a defendant's

exercise of the right to silence. Id. at 862-864. These instructions sufficed to cure any possibility of prejudice. See Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L. Ed. 2d 921 (1960)).

Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts. Because petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice, we conclude that the District Court did not abuse its discretion in denying petitioners' motions to sever. The judgment of the Court of Appeals is Affirmed.

Zafiro was followed in this Circuit by United States v. Harwood, 998 F.2d 91, 95, 96 (2d Cir. 1993), cert denied 510 U.S. 971, 114 S.Ct. 456, 126 L. Ed. 2d 388 (1993), as follows:

The rule in Zafiro was followed:

In short, defendants must, at the threshold, articulate specific instances of "legally cognizable prejudice." Id. at ____, 113 S.Ct. at 939. Even then, severance is not required. Id. Rather, "[t]he decision whether to sever multi-defendant trials is committed to the sound discretion of the trial court and is 'virtually unreviewable.'" United States v. LaSanta, 978 F.2d 1300, 1306 (2d Cir. 1992) (quoting United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991)); see Zafiro, ____ U.S. at ____, 113 S.Ct. at 938.

In this case, both defendants claim that they knew nothing about the LSD hidden in the van. Each accuses the other of placing it there. Like the petitioners in Zafiro, both defendants argue that, because the jury was forced to evaluate mutually exclusive defenses, it was virtually inevitable that the jury would conclude that both were lying and would convict both on that basis. We find the argument unpersuasive.

McKee and Harwood have failed to satisfy the burden of showing "legally cognizable prejudice." Id. at ____, 113 S.Ct. At 939. Moreover, even if there were some risk of prejudice, the district court carefully instructed the jury that "guilt is individual, and your verdict of guilty or not guilty must be based solely upon the evidence about each defendant . . . without regard to the guilt or innocence of anyone else." See Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L. Ed. 2d 176 (1987) (proper limiting instructions often suffice to cure risk of prejudice).

Accordingly, we conclude that the district court did not abuse its discretion in denying defendants' motion to sever.

Also, United States v. Haynes, 16 F.3d 29, 31, 32 (2d Cir. 1994), was a case involving serious antagonistic defenses, namely, where defendants accused each other of committing the crime. Held, the denial of severance was affirmed. "The Supreme Court concludes that severance is justified (in the district court's discretion) not because of antagonistic defenses, but rather where joinder would 'compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence . . ..'" Id. at 32.

As to the defendants' raising of the so-called "antagonistic defense," a review of the allegations, reveals that the situation here is no true "antagonistic defense." Defendant Lloyd asserts that she plans to "acknowledge the commission of the robbery and to concede the truthfulness of the cooperating defendants' testimony." (Lloyd Letter Memorandum at 3-4). The counsel for defendant Lewis states his defense will be that "he was neither a participant nor present when the alleged robbery occurred" and he intends to "completely discredit the testimony of the cooperating defendants' testimony" in contradiction to Lloyd's defense. (Lewis Brief at 6).

This is no classic "antagonistic defense" where the defendants accuse each other of committing the crime. Even in that type of situation, where the defendants accuse each other of committing the charged crime, severance is not required. See Harwood, 998 F.2d at 95, 96. Here, there is some antagonism in the defendants' alleged theories. However, in the Court's view this situation does not require severance. A showing of "some antagonism between defendant's theories" does not mandate a severance. United States v. Carpenter, 689 F.2d 21, 27-28 (2d Cir. 1982).

The defendant Lloyd also contends that a joint trial with Lewis will be unfairly prejudicial as it will require her to sit at a counsel table "with the person who used a weapon to victimize postal employees." (Lloyd Letter Memorandum at 5). According to Lloyd's counsel, this will be a

"prejudicial spill-over."  Again, the Court disagrees.

There is no prejudicial spill-over in this case.  The defendants Lloyd and Lewis are both charged in all three counts.  They are both charged with the same crime; namely, the Post Office Robbery.  Of importance, the evidence against both Lloyd and Lewis is virtually identical and, as stated above, there is no viable "antagonistic defense."  That both defendants will be seated at the same counsel table is the usual and customary method of defendant placement in a criminal trial and does not violate any rights on the part of either defendant.

Finally, the defendant Lloyd's belief that she would have a better chance of acquittal in a separate trial, is insufficient to grant a severance.  See United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (The defendant's belief that he would have had a better chance of obtaining an acquittal at a separate trial is an insufficient ground to warrant a severance).

Of course, as stated many years ago by the Supreme Court, and as equally important today, is the common sense and totally valid reason, that joint trials also "conserve state funds, diminish inconveniences to witnesses and public authorities and avoid delays in bringing those accused of a crime to trial."  Bruton v. United States, 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L. Ed. 2d 476 (1968).

Accordingly, for the reasons stated above, the motion for a severance made by both defendants Lloyd and Lewis is denied.

### III.  As To The 911 Emergency Call

The defendant Lloyd also moves to preclude admission of a postal employee's 911 emergency phone call.  According to the Government, the employee who placed the call and was in the Post Office at the time of the robbery, will testify at the trial and discuss placing the 911 call. The Government contends that most of the statements made during the call are non-testimonial, and

thus admissible.  Also, the Government denies that the evidence should be excluded under Federal Rule of Evidence 403.

The defendant Lloyd seeks to exclude the actual 911 call.  However, in the alternative, Lloyd is willing to stipulate to the accuracy of the transcript of the 911 phone call and permit its introduction in evidence.  Also, in the event the Court does permit the introduction and playing of the 911 call, the defendant Lloyd requests that the Court delete the later portions of the conversation between the postal employee and the 911 operator, after the pertinent information regarding the robbery had been communicated.  The defendant makes this latter application on the ground that the conversation evolved from the need for emergency assistance into testimonial statements, which should be excluded.

The Court finds that the telephone statements made by the postal employee are admissible in that they fall within the exceptions to the hearsay rule for (1) excited utterances, (Fed. R. Evid. 803(1), and (2) present sense impressions (Fed. R. Evid. 803(2).  As defined by the Federal Rules of Evidence, a present sense impression is "a statement describing or explaining an event or condition made while or immediately after the declarant perceived it."  These statements are considered to be trustworthy because they are contemporaneous with the event and its description limits the possibility for intentional deception or failure of memory.  United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002) (citing Fed. R. Evid. 803(1)).

The hearsay exceptions for both an excited utterance and a present sense expression, are well defined in United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002), as follows:

> As defined by the Federal Rules of Evidence, a present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Rule 803(1), Fed.

R. Evid. Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.

\* \* \* \* \*

[t]he hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), Fed. R. Evid. . . .. "[t]he rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." Unlike present sense impressions "an excited utterance need not be contemporaneous with the startling event to be admissible." Rather the length of time between the event and utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), "under the stress of excitement caused by the event or condition."

\* \* \* \* \*

Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement 'describe or explain' the contemporaneous event or condition, the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - i.e., those that "relate to" the event. Id. at 112 n. 3. (internal citations omitted).

However, it is a condition precedent to the admissibility of a statement under either exception that the declarant has personally observed the events described. See Brown v. Keane, 355 F.3d 82, 89-90 (2d Cir. 2004); Schering Corp. v. Pfizer Inc., et al., 189 F.3d 218, 233 (2d Cir. 1999) (stating that personal knowledge is required for admissibility of a hearsay statement as a present sense expression); United States v. Tocco, 135 F.3d 116, 128 (2d Cir. 1998) (discussing the requirement of personal knowledge when reviewing the admission of a hearsay statement under the excited utterance exception).

Here, the 911 call at issue is admissible under both theories. It was a present sense

impression in that it described or explained the robbery immediately after the event by one who personally observed the event. Also, the call is admissible as an excited utterance in that it was made by a participant while under the stress of the obvious excitement caused by the robbery by men with guns.

Counsel for the defendant Lloyd made an additional request in the event the Court permits the introduction and playing of the 911 call. In that event, counsel requests that the Court delete the latter portion of the conversation between the Post Office employee and the 911 operator after the pertinent information regarding the robbery had been communicated. The Court grants this request and directs that the portion of the 911 call at issue starting on page 8 <u>after</u> the word "crying" to the END OF CALL be redacted. This deleted portion is not admissible under either hearsay exception theory.

### IV. <u>As To The Co-Conspirator Statements</u>

In a far-ranging attack, counsel for Lloyd requests that the Court precludes the testimony of co-conspirators Jeremy Hough and Jamel Thompson. These two men testified previously in the trial of the other co-conspirators, Travis Walker and Sharod Williams. This preclusion theory is based on the defendant's contention that "the Court must first determine whether independent corroborating evidence exists establishing the defendant's (Lloyd) involvement in the crime . . . Absent any 'corroborating evidence that Ms. Lloyd participated in the robbery, we respectfully request that the Court preclude the testimony of Hough and Walker." (Lloyd's Letter Memorandum at 7 and 8). In sum, the defendant contends that there was no independent corroborative evidence of Lloyd's participation in the conspiracy to rob the Post Office.

In opposition, the Government asserts that, "The Government will lay a proper foundation

at trial, through witness testimony, records and other evidence, including Lloyd's confession; which

will establish by a preponderance of the evidence that a conspiracy existed, that Lloyd participated

in the conspiracy and that the statements were made in furtherance of the conspiracy and during its

pendency." (Government Memorandum of Law at 13, 14).

The applicable rule of law in this regard is Rule 801(d)(2)(E), which provides as follows:

(d) Statements which are not hearsay. A statement is not hearsay if –

> (2) Admission by party-opponent. The statement is offered against
> a party and is

>> (E) A statement by a coconspirator of a party during
>> the course and in furtherance of the conspiracy. The
>> contents of the statement shall be considered but are
>> not alone sufficient to establish . . . the participation
>> therein of the declarant and the party against whom
>> the statement is offered under subdivision (E)."

This Rule was amended in 1997 so that the Court can consider the contents of a conspirators

statement in making the preliminary determination as to whether a conspiracy exists between the

declarant and the party against whom a statement is offered. The amendment reflected the ruling of

the Supreme Court in Bourjaily v. United States, 483 U.S. 171, 183, 107 S.Ct. 2775, 97 L. Ed. 2d

144 (1987). To admit a statement under the coconspirator exception to the hearsay rule, a district

court must find two factors by a preponderance of the evidence. First, that a conspiracy existed that

included the declarant and the defendant. Second, that the statement was made during the course

and in furtherance of the conspiracy. United States v. Orena, 32 F.3d 704, 711 (2d Cir. 1994). Also,

as is pertinent in regard to this area of the law, "there must be some independent corroborating

evidence of the defendant's participation in the conspiracy. United States v. Tellier, 83 F.3d 578,

580 (2d Cir. 1996).

On this issue of the participation of the defendant Lloyd in the conspiracy to rob the Post Office, the Government asserts that it will provide a proper foundation at the trial, including Lloyd's confession. Nothing more was revealed by the Government. The Court finds that it cannot make a definitive decision on the statements provided. This issue, namely, evidence of the defendant Lloyd's participation in the conspiracy, will have to await the presentation of the testimony and the evidence at the trial. This is a preliminary factual issue for the Court to determine under a "preponderance of evidence standard." See Bourjaily, 483 U.S. at 175-76. Therefore, decision is reserved on the motion by the defendant Stephanie Lloyd to preclude the testimony of Jeremy Hough and Jamel Thompson, based on the failure of the Government to prove, by a preponderance of the evidence, that the defendant Lloyd was a "participant" in the conspiracy to rob the Post Office.

### IV. Conclusions

Based on the reasons stated above, the Court makes the following determinations:

1.      The motion by both defendants Stephanie Lloyd and Laurell Lewis for a severance of the joint trial, is denied.

2.      The motion by the defendant Stephanie Lloyd to bar the introduction of the 911 emergency call is denied, except as to the deletion of a certain portion, as is set forth in the decision.

3.      As to the motion by the defendant Stephanie Lloyd to preclude certain co-conspirators' statements, decision is reserved, awaiting the trial.

The parties and the attorneys are directed to be present before United States Magistrate Judge Wall on May 8, 2012 at 9:30 am for the select of a jury. Trial is to begin on May 9, 2012 at 9:30 am.

**SO ORDERED.**


Dated: Central Islip, New York
       May 1, 2012


                         _____*/s/ Arthur D. Spatt*_____
                            ARTHUR D. SPATT
                      United States District Judge